PALILA, (Psittirostra bailleui), an endangered species et al., Plaintifts-Appellees,

v.

HAWAII DEPARTMENT OF LAND AND NATURAL RESOURCES et al., Defendants-Appellants.

No. 79–4636.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 14, 1980.

Decided Feb. 9, 1981.

Edwin P. Watson, Deputy Atty. Gen., Honolulu, Hawaii, for defendants-appellants.

Michael R. Sherwood, Sierra Club Legal Defense Fund, Inc., San Francisco, Cal., for plaintiffs-appellees.

Before SKOPIL, FLETCHER and PREGERSON, Circuit Judges.

SKOPIL, Circuit Judge:

## INTRODUCTION

This action was brought on behalf of an endangered bird, the Palila, pursuant to the Endangered Species Act, 16 U.S.C. § 1531 et seq. (1974). The district court held that no disputed material facts existed and that the State of Hawaii's game management practices involving feral goats and sheep in the Palila's habitat constituted an unlawful "taking" as defined by the Act. 471 F.Supp. 985 (D. Hawaii 1979). The court granted summary judgment in favor of plaintiffs and against the defendants Hawaii Department of Land and Natural Re-

sources and Susumu Ono, Chairman of the Hawaii Board of Land and Natural Resources. The court ordered that the sheep and goats be permanently removed from the bird's critical habitat.

Two issues are raised on appeal: (1) are there disputed material facts that preclude summary judgment; and (2) did the trial court err in finding that Hawaii's actions constituted a "taking" as defined by the Act?

We affirm.

## FACTS AND PROCEEDINGS BELOW

The Palila bird is a finch-billed member of the Hawaiian Honeycreeper family (Drepanididae) and is found only in Hawaii. It has been classified as an endangered species since 1967. Although the exact population trends of the Palila are not known, experts agree that the number is dangerously close to the bird's extinction level.

The Palila's critical habitat was officially designated in 1977. The habitat encompasses only about 10% of the bird's historical range and is situated in the mamane-naio forest high on the slopes of Mauna Kea. About 30% of the designated habitat contains no Palila but was included to allow for population expansion and flock movement.

For the last thirty years, the state of Hawaii has maintained herds of feral sheep and feral goats in a game management area on the slopes of Mauna Kea. The reserve is maintained and managed by the Hawaii Department of Land and Natural Resources for sport-hunting purposes. The animals are free to roam and to occupy the Palila's habitat. The sheep and goat population varies year to year, due to the "interplay between hunter pressure and defendants' game management policies." 471 F.Supp. at 989. In June 1979 the goat population in the critical habitat was between 200–300 and the sheep numbered about 600.

The browsing sheep and goats have a destructive impact on the mamane–naio ecosystem. The animals feed on mamane leaves, stems, seedlings and sprouts, and prevent regeneration of the forest. The herds' practice of bedding down near the tree line and feeding in flocks at lower levels denudes large areas of the forest. The tree line is receding as the animals move down the mountain in search of food. Fencing experiments conducted by the defendants in the critical habitat showed that in the absence of the sheep and goats, the forest regenerated.

The U.S. Fish and Wildlife Service has, since 1975, listed the Palila as one of its "high priority species." 40 Fed.Reg. 21499, 21501 (1975). A Palila Recovery Team was established pursuant to the Act to study the bird and devise a plan to save it from extinction. The team members included two wildlife biologists employed by the defendants and a Professor of Zoology from the University of Hawaii. The product of the team's work, the Palila Recovery Plan, was officially approved by the U.S. Fish and Wildlife Service and led to establishment of the bird's critical habitat. The plan concluded that the eradication of the sheep and goats was necessary to achieve the regeneration of the forest and restoration of the Palila.

The Hawaii Department of Land and Natural Resources initiated its own planning study of Mauna Kea in 1975. The result was the Mauna Kea Plan, officially adopted by the Hawaii Board of Land and Natural Resources. The plan allowed for the continued presence of sheep and goats but called for fencing of about 25% of the forest. Additional studies would determine if the game animals should be exterminated. The Board apparently rejected recommendations made by its chairperson and by its staff that the plan should call for the complete elimination of the sheep and goats from the mamane-naio forest.

The Sierra Club and others brought this action in the name of the Palila. They alleged that the state's practice of maintaining feral goats and sheep for sport hunting purposes, a practice perpetuated under the Mauna Kea Plan, threatened extinction of the bird. Plaintiffs moved for summary judgment. The district court granted the motion based on the pleadings,

depositions of five staff members from the defendants' Division of Fish and Game, and depositions of three other experts.

The district court ordered the state to initiate steps to remove the feral sheep and goats from the Palila's critical habitat within two years. The court later approved the state's plan for eradication of the animals through liberalized public hunting. The state's request for a stay pending appeal was denied by the trial court and later by this court. After some delay, the state opened the area for hunting in accordance with the district court's order. Despite the implementation of the district court's order, at the time of oral argument the feral sheep population had increased in the critical area, although the number of feral goats had been reduced.

### DISCUSSION

Our review is limited to determining the appropriateness of summary judgment in this case. *California Pacific Bank v. Small Business Administration*, 557 F.2d 218, 220 (9th Cir. 1977). Summary judgment may properly be granted only when no genuine issue of material fact exists and the moving party is clearly entitled to prevail as a matter of law. *Real v. Driscoll Strawberry Association*, 603 F.2d 748, 753 (9th Cir. 1979). We agree with Judge King's insightful and thorough discussion, and we add the following analysis.

a. Disputes of material facts.

The state argues that summary judgment was improper because of the existence of material fact issues. As we discuss below, the Endangered Species Act prohibits the taking of any endangered species. The only facts material to this case are those relating to the questions whether the Palila is an endangered species and, if so, whether the defendants' actions amounted to a taking. The factual disputes alleged by defendants are either immaterial or are unsupported by any evidence in the record.

Any dispute or uncertainty as to the current population trends of the Palila is immaterial. The relevant inquiry is whether the Palila remains an endangered species. There is no dispute as to that fact.

■ Regeneration of the mamane-naio forest and the Palila's ability to survive in other habitats may be material to the question whether a taking has occurred, but defendants did not submit evidence to create a dispute as to those facts. Plaintiffs' expert testimony showed that elimination of the feral goats and sheep is necessary to the survival of the Palila. Defendants cannot withstand a motion for summary judgment by simply asserting that the facts are disputed. Sufficient evidence supporting a claimed fact must be submitted to create a genuine factual issue. *First National Bank v. Cities Service Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968). No genuine issues of material fact precluded summary judgment.

b. Was the state's action a "taking"?

The Endangered Species Act makes it unlawful for any person to "take any [endangered] species". 16 U.S.C. § 1538(a)(1)(B). The statute defines "taking" as including to "harass, harm, pursue, hunt, wound, ... or attempt to engage in any such conduct." 16 U.S.C. § 1532(14). "Harass" is further defined by regulations as an intentional or negligent act or omission that significantly disrupts normal behavior patterns of the endangered animal. 50 C.F.R. § 17.3(c). Similarly, "harm" is defined to include activity that results in significant environmental modification or degradation of the endangered animal's habitat. *Id.*

■ The Act requires the affirmative preservation of an endangered species. *E. g., Tennessee Valley Authority v. Hill*, 437 U.S. 153, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1979); *North Slope Borough v. Andrus*, 642 F.2d 589 (D.C.Cir. 1980). To prove a violation of the Act, however, it must be shown that the alleged activity had some prohibited impact on an endangered species. *Barcelo v. Brown*, 478 F.Supp. 646 (D.P.R. 1979).

■ The defendants' action in maintaining feral sheep and goats in the critical habitat is a violation of the Act since it was shown that the Palila was endangered by the activity. Defendants have not shown

us how the district court erred in determining that the acts and omissions of the state were prohibited by the Act. The district court's conclusion is consistent with the Act's legislative history showing that Congress was informed that the greatest threat to endangered species is the destruction of their natural habitat. *TVA v. Hill,* 437 U.S. at 179, 98 S.Ct. at 2294. It was supported by all of the expert opinions.

Defendants' proposed Mauna Kea Plan would allow some sheep and goats to remain in the mamane-naio forest. Plaintiffs offered ample evidence that complete eradication of the feral animals is necessary to prevent harm to the Palila. Defendants did not rebut this showing. The district court did not err, therefore, in finding that implementation of the Mauna Kea Plan would not end the "taking" of the Palila within the meaning of the Act.

## CONCLUSION

No genuine issues of material fact precluded summary judgment. The state violated the Endangered Species Act by maintaining feral sheep and goats in the Palila's habitat.

The judgment of the district court is AFFIRMED.