**In re Kelly R. PETERSEN and Penny L. Petersen, Debtors.**

**Nancy J. Gargula, United States Trustee, Plaintiff,**

**v.**

**Kelly R. Petersen, Defendant.**

**Bankruptcy No. 02–84731.**

**Adversary No. 03–8253.**

United States Bankruptcy Court, C.D. Illinois.

Oct. 18, 2004.

Spencer L. Daniels, Peoria, IL, for Defendant.

Sabrina M. Petesch, Peoria, IL, Assistant U.S. Trustee.

## OPINION

THOMAS L. PERKINS, Bankruptcy Judge.

This matter is before the Court on the United States Trustee's (U.S. TRUSTEE) Motion for Summary Judgment on its Complaint Objecting to Discharge of the Defendant, Kelly R. Petersen (KELLY), on the basis that KELLY'S plea of guilty to the crime of bankruptcy fraud is conclusive of the facts necessary to establish the grounds for denial of the discharge.

### FACTUAL AND PROCEDURAL BACKGROUND

KELLY and his wife, Penny L. Petersen (PENNY), filed a joint petition for protection under Chapter 13 of the Bankruptcy Code on October 18, 2002. Their Chapter 13 Plan was confirmed by Order entered December 17, 2002. On June 5, 2003, the U.S. TRUSTEE filed a Motion for Turnover of Monies from Sale of Undisclosed Real Estate alleging that KELLY owned an interest in several parcels of real estate as the buyer under an Agreement for Warranty Deed, that he failed to disclose his interest in his bankruptcy schedules, that he sold the real estate postpetition, that he received proceeds of approximately $46,000, and that he failed to turn over the proceeds to the Chapter 13 Trustee. After an emergency hearing, the Court entered an Order directing KELLY to account for and turn over to the Chapter 13 Trustee all proceeds from the sale of the real estate.

On June 13, 2003, KELLY filed an accounting stating that he had spent a por-

tion of the proceeds and had $25,143 left in his possession. KELLY'S attorney filed a Motion to Prepay the Plan in full so that the Debtors could receive a discharge, a Motion for Order of Protection against a document production request from the U.S. TRUSTEE, and a Motion to Stop the Wage Garnishment in effect against KELLY by the Chapter 13 Trustee.

On July 24, 2003, the U.S. TRUSTEE, alleging that PENNY was equally culpable, filed a Motion to Convert the case to one under Chapter 7. The gist of the motion was that the Debtors' conduct concerning the nondisclosure and sale of the real estate was so egregious as to warrant denial of discharge under Section 727, an option not available in Chapter 13, so that conversion to Chapter 7 was the only way that the Debtors could suffer the just consequences of their actions.

After notice and a hearing, the U.S. TRUSTEE'S Motion to Convert was granted. The Debtors' Motions to Prepay the Chapter 13 Plan and for a Protective Order were denied. The Motion to Stop the Wage Garnishment was withdrawn. According to the Final Report and Account filed by the Chapter 13 Trustee, all allowed secured and unsecured claims were paid in full and the Debtors received a "refund" of $2,728.09. Full payment was enabled by KELLY'S payment to the Chapter 13 Trustee of the funds he had left from the sale of the real estate. Despite full payment of all allowed claims, the Debtors did not receive a Chapter 13 discharge.

As anticipated, the U.S. TRUSTEE filed an Adversary Complaint on November 7, 2003, against both KELLY and PENNY. Brought under Section 727, the Complaint seeks to have the discharge denied under Section 727(a)(2)(B) based on the following concealments of property of the estate with the intent to hinder, delay, or defraud a creditor or the trustee:

1. Failure to disclose KELLY'S interest in real estate;

2. Failure to disclose rental income of $900 a month;

3. Failure to disclose a prepetition claim against Jerry Hess for $17,500 owed by him to KELLY;

4. Concealing the postpetition sale of the real estate; and

5. Concealment of postpetition funds collected from Jerry Hess totaling $11,167.52.

Alternatively, the Complaint seeks to deny the discharge under Section 727(a)(4) based on the following grounds:

1. Making a false oath by not disclosing the real estate owned by KELLY on the bankruptcy schedules;

2. Making a false oath by not disclosing the income they were receiving from the properties;

3. Making a false oath by not disclosing the prepetition suit filed against Jerry Hess; and

4. A false oath resulting from false testimony at the meeting of creditors.

KELLY answered the Complaint by admitting the nondisclosures, but denying that the omissions and false oaths were made with fraudulent intent. PENNY did not respond to the Complaint, but on February 10, 2004, the U.S. TRUSTEE voluntarily dismissed her from the adversary proceeding. In the Joint Pretrial Statement filed on March 23, 2004, KELLY reiterated his position that he did not intentionally make a false oath. He asserted that the properties and income were omitted from his schedules through inadvertence, and that his failure to disclose the assets to the bankruptcy trustee at his first meeting of creditors was inadvertent.

On March 31, 2004, the U.S. TRUSTEE filed a Motion for Summary Judgment and brief in support thereof relying on the transcript of KELLY'S testimony at an examination conducted pursuant to Fed. R.Bankr.Pro.2004 to prove his knowing and fraudulent intent. KELLY filed a Response that simply denied that the omissions were intentional and asserted that his intent was a question of fact not appropriate for resolution via summary judgment. No affidavits or other testimony or evidence were attached to or submitted with the Response. A hearing on the Motion and Response was scheduled for June 21, 2004, at which time the U.S. TRUSTEE advised the Court that KELLY had entered a plea of guilty to the crime of bankruptcy fraud and the parties were given additional time to file supplemental pleadings.

On July 2, 2004, the U.S. TRUSTEE filed a Supplement to its Motion for Summary Judgment attaching a certified copy of the transcript of the "change of plea" hearing before the U.S. District Court on June 9, 2004, at which KELLY changed his plea to guilty to four counts of bankruptcy fraud. Count I of the indictment alleged a failure to disclose his interest in real estate on his bankruptcy schedules. Count II alleged a failure to disclose the claim against Mr. Hess. Count III alleged a false oath when he signed and verified his bankruptcy schedules as true, correct and complete. Count IV alleged a false oath when he denied, at his meeting of

creditors, having any interest in property or assets not disclosed in his schedules. No response or further pleading was filed by KELLY. At a hearing on August 24, 2004, KELLY'S attorney advised the Court that he had nothing further to offer by way of response and declined an opportunity to file a brief on the issue of the effect of KELLY'S guilty plea on the adversary complaint for denial of his discharge.[1]

## ANALYSIS

■ A bankruptcy debtor's false oaths and concealment of assets are defined as crimes, as follows, when a debtor:

(1) knowingly and fraudulently conceals from a custodian, trustee, marshal, or other officer of the court charged with the control or custody of property, or, in connection with a case under title 11, from creditors or the United States Trustee, any property belonging to the estate of a debtor;

(2) knowingly and fraudulently makes a false oath or account in or in relation to any case under title 11;

(3) knowingly and fraudulently makes a false declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, in or in relation to any case under title 11;

\*       \*       \*       \*       \*       \*

(9) after the filing of a case under title 11, knowingly and fraudulently with-

---

1. KELLY'S apparent indifference may be explainable. Allowed unsecured claims in the Chapter 7 case total $7,720.48. Most of the unsecured creditors listed on the DEBTORS' petition have filed claims. In addition to the excess funds of $2,728.09 from the Chapter 13 proceeding, the Chapter 7 Trustee received $29,376.93 from the sale of the DEBTORS' real estate. PENNY has been paid her homestead exemption in the amount of $7,500, and the Court has under advisement the issue of whether KELLY is entitled to claim an exemption. PENNY has been given an opportunity to claim an additional exemption premised upon KELLY'S desertion. Even if the Court rules against the Chapter 7 Trustee and another homestead exemption is allowed, it appears that all claims filed in the Chapter 7 case will be paid in full, with interest, and that a surplus will be returned to the DEBTORS.

holds from a custodian, trustee, marshal, or other officer of the court or a United States Trustee entitled to its possession, any recorded information (including books, documents, records, and papers) relating to the property or financial affairs of a debtor, shall be fined under this title, imprisoned not more than 5 years, or both.

18 U.S.C. § 152.

■ It is well established that a criminal conviction, rendered after trial, will preclude relitigation of the common factual issues in a subsequent bankruptcy case. *In re Ramirez Rodriguez,* 209 B.R. 424 (Bankr.S.D.Tex.1997) (criminal conviction based on debtor's operation of Ponzi scheme conclusively establishes fraudulent intent, precluding relitigation of issue in fraudulent transfer action under Section 548(a)); *In re Randy,* 189 B.R. 425 (Bankr.N.D.Ill.1995) (collateral estoppel applied as to debtor's fraudulent intent in avoidance action under Section 548(a)); *Matter of Stewart,* 186 B.R. 322 (Bankr. M.D.Ga.1995) (debtor collaterally estopped in revocation of discharge proceeding); *In re Chaplin,* 179 B.R. 123 (Bankr.E.D.Wis. 1995) (debtor collaterally estopped in denial of discharge proceeding).

It is a more difficult question whether a guilty plea should have the same preclusive effect with respect to the factual elements of the crime. Courts are not reluctant, however, to give preclusive effect to a guilty plea under appropriate circumstances. *Matter of Dennis,* 78 B.R. 1012 (Bankr.N.D.Ala.1987) (debtor's plea of guilty to wire fraud given preclusive effect in subsequent nondischargeability action under Section 523(a)(2)(A) so as to warrant summary judgment for plaintiff); *Blohm v. C.I.R.,* 994 F.2d 1542 (11th Cir.1993) (taxpayer collaterally estopped from denying liability for additional tax assessed for fraud after pleading guilty to tax evasion).

The effect of a debtor's prior plea of guilty to the crime of bankruptcy fraud in a subsequent denial of discharge proceeding is not a novel issue. The Eleventh Circuit Court of Appeals addressed the issue in *Matter of Raiford,* 695 F.2d 521 (11th Cir.1983). There, the debtor plead guilty under 18 U.S.C.A. § 152, to the criminal charge of knowingly and fraudulently making a false declaration under penalty of perjury in a bankruptcy case, and knowingly and fraudulently making a false entry in a document affecting or relating to the property or affairs of a debtor while contemplating bankruptcy. The bankruptcy trustee then sought to use the guilty plea as a basis for summary judgment on his complaint to deny the debtor's discharge. Noting that the knowing and fraudulent intent requirement was identical under the criminal statute and the denial of discharge statute, the court framed the issue as whether the discharge can be denied by summary judgment solely on the ground that the guilty plea is conclusive, or whether the guilty plea furnishes only a rebuttable presumption so that an evidentiary hearing is required. 695 F.2d at 522.

Reasoning that the doctrine of collateral estoppel was the appropriate analytical path, the court stated as follows:

> Under the doctrine of collateral estoppel a party is precluded from litigating an issue if (1) the identical issue has been (2) actually litigated in a prior suit which (3) could not have been decided without resolving the issue. (Citations omitted). The use of a criminal conviction as conclusive of an issue in subsequent civil litigation, though not universally accepted, is well established today. (Citations omitted). Because the complainant's standard of proof is higher, and greater procedural protections attach in a criminal prosecution, a conviction is a sufficiently reliable determina-

tion of the relevant issue. *See* 1B J. Moore & T. Currier, *Moore's Federal Practice,* ¶ 0.418[1] at 2703 (2d ed.1982). This analysis apparently has been applied in the bankruptcy context. *See* J. Moore & L. King, *supra,* ¶ 13.24 at 1333 (a debtor's "conviction for [a bankruptcy] offense is conclusive proof requiring a denial of a discharge").

While some disagreement exists, most courts give a judgment based on a guilty plea the same collateral effect as any other criminal conviction, conclusive of all issues that would have been resolved by a conviction following a contested trial. 1B J. Moore & T. Currier, *supra,* ¶ 0.418[1] at 2706; *see, e.g., Ivers v. United States,* 581 F.2d 1362, 1366–67 (9th Cir.1978); *United States v. Podell,* 572 F.2d at 35; *Plunkett v. Commissioner,* 465 F.2d 299, 305–06 (7th Cir. 1972); *Arctic Ice Cream Co. v. Commissioner,* 43 T.C. 68, 76, 1964 WL 1152 (1964). *Cf. McCarthy v. United States,* 394 U.S. 459, 466, 89 S.Ct. 1166, 1170, 22 L.Ed.2d 418 (1969) (guilty plea is an admission of all elements of the crime charged). There are good reasons for this approach. Although a guilty plea eliminates the need for a contested trial, a federal court cannot enter judgment upon the plea unless it determines that a factual basis exists for it. Fed. R.Crim.P. 11(f). A federal criminal defendant wishing to avoid both a trial and any collateral estoppel effects may ask for court permission to plead *nolo contendere. Id.* 11(b) & advisory committee note; Fed.R.Evid. 803(22). A defendant who fails to exercise this option cannot argue subsequently that the lack of a contested trial renders his plea ineffective for collateral estoppel purposes.

There is no unfairness in applying collateral estoppel in this case. While the complainant in the two actions is not the same, the bankruptcy trustee having re-placed the United States, mutuality of parties is no longer considered a prerequisite in federal court to the fair use of collateral estoppel. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) (offensive collateral estoppel); *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971) (defensive collateral estoppel). Indeed, collateral estoppel has been invoked in a situation analogous to that found in this litigation: a civil suit brought by a nongovernmental entity against a party previously convicted of a related crime. *Wolfson v. Baker,* 623 F.2d 1074, 1080 (5th Cir.1980), *cert. denied,* 450 U.S. 966, 101 S.Ct. 1483, 67 L.Ed.2d 615 (1981).

*Matter of Raiford,* 695 F.2d at 523–24.

The Court went on to caution against the offensive use of collateral estoppel where the defendant did not have an incentive to litigate the issue in the criminal proceeding. The court rejected that concern in the case before it, finding that although the plea was made in exchange for a sentence recommendation, it was still a felony conviction and the debtor "had every reason to try to establish his innocence in the criminal proceeding." 695 F.2d at 524. The court affirmed the grant of summary judgment for the trustee, holding the guilty plea to be conclusive.

At least two bankruptcy courts have followed *Raiford* in reported opinions and have held that a debtor's guilty plea to a charge of bankruptcy fraud is properly given conclusive effect in a subsequent denial of discharge proceeding. *In re Moss,* 258 B.R. 391 (Bankr.W.D.Mo.2001); *In re Lloyd,* 142 B.R. 866 (Bankr.E.D.Ark.1992). *See, also, In re Slatkin,* 310 B.R. 740 (C.D.Cal.2004) (debtor's guilty plea to charges of wire and mail fraud properly

given preclusive effect on issue of whether debtor acted with actual intent to hinder, delay, or defraud creditors, in trustee's proceeding to avoid fraudulent transfers).

■ This Court agrees with *Raiford* that, in certain circumstances, applying the doctrine of collateral estoppel, as an offensive weapon of the plaintiff in a civil suit, based upon a defendant's prior guilty plea in a criminal case, is appropriate. For purposes of the false oath allegations, the elements of proof of Section 727(a)(4)(A) are identical to those of 18 U.S.C.A. § 152(2), including the requisite intent, that the false oath was made "knowingly and fraudulently." Thus, application of the doctrine of collateral estoppel as conclusive to the false oath allegations brought under Section 727(a)(4)(A) follows plainly from the fact that the criminal statute is, for all material purposes, identical to the bankruptcy provision.

Although the identity of statutory language does not exist with respect to the concealment of property allegations, a criminal conviction or plea of guilty necessarily includes the fraudulent intent called for by the bankruptcy statute. In relevant part, the bankruptcy fraud statute makes it a crime for a debtor to "knowingly and fraudulently conceal(s) from a . . . trustee . . . or . . . from creditors . . . any property belonging to the estate of a debtor." 18 U.S.C.A. § 152(1). Section 727(a)(2)(B), in relevant part, provides for denial of discharge where the debtor "with intent to hinder, delay, or defraud a creditor or an officer of the estate . . . has . . . concealed . . . property of the estate . . . ." 11 U.S.C. § 727(a)(2)(B). Under the criminal statute, because the debtor's state of mind must be knowing *and* fraudulent, an intent to defraud is a necessary element of the crime. Under the civil statute, an intent to defraud, while not necessary, is sufficient. Therefore, even though the *mens*

*rea* elements of the laws are not phrased identically, a careful reading leads to the conclusion that a fraudulent intent, a necessary part of the criminal charge, is sufficient for liability under Section 727(a)(2).

From the transcript of KELLY'S change of plea hearing, it is clear that the underlying property and transactions relating to that property are identical and that the same issues of nondisclosure and false oaths that are the subject of this adversary proceeding were the subject of the criminal proceeding. KELLY was represented by counsel in the criminal case and his admissions made in the District Court to the conduct alleged were clear and unequivocal. The District Court made specific findings that an adequate factual basis existed to support the charges and the plea of guilty. In addition, the standard of proof is lower in this civil proceeding.

In the case at bar, none of the circumstances that might justify reluctance to allow the offensive use of collateral estoppel are present. KELLY'S plea of guilty was entered as an "open plea" without agreement as to sentencing recommendation. KELLY had every incentive to defend against the criminal charges fully and vigorously. There are no procedural opportunities available to KELLY in the bankruptcy litigation that were unavailable in the criminal case that might be likely to cause a different result. *See, Matter of Stewart,* 186 B.R. 322, 326 (Bankr.M.D.Ga. 1995).

### CONCLUSION

Accordingly, the Court concludes that KELLY'S guilty plea provides conclusive grounds for denial of his discharge under Section 727(a)(2)(B) and (a)(4)(A). For these reasons, the Court determines that resolution of this matter on summary judgment in favor of the U.S. TRUSTEE is appropriate on the basis of the collateral

estoppel effect to be accorded KELLY'S guilty plea. This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

### ORDER

For the reasons stated in an Opinion filed this day, IT IS HEREBY ORDERED that the U.S. TRUSTEE'S Motion for Summary Judgment on the Complaint to Deny Discharge is GRANTED and the Discharge of KELLY R. PETERSEN is DENIED pursuant to 11 U.S.C. §§ 727(a)(2)(B) and (a)(4)(A).